Case number three this morning, 4-13-0798, Decatur Public School District 61 v. The Human Rights Commission. For the appellant, we have Natalie Thompson, and for the appellee, we have Linda Wachiansa. Ms. Thompson, you may proceed. Good morning, Your Honors. Good morning. My name is Natalie Thompson, and I'm here for the Decatur Public School District. As I'm sure you know, this is a case of alleged gender discrimination that was filed by a Mr. Steven Luker. In August of 2006, Mr. Luker filled out an application for a teaching assistant position with Decatur Public School District. He was interviewed for this position on August 24, 2006, and then received a letter that he was not going to be placed on an eligibility list. Throughout the pleadings and at the hearing, although Mr. Luker indicated a teaching assistant position on the front of his application, what we came to find out was this is a substitute teaching assistant, and it's not an actual position, but it's an eligibility list. What the school district does is they interview individuals, and they either approve or don't approve to be placed on these eligibility lists. When there is a substitute teaching assistant that is absent, they will call someone on this eligibility list, and then they can either choose to come in or not to come in. So that's kind of the background of what happened here. So Mr. Luker received a letter that he was not going to be placed on the eligibility list for the substitute teaching assistant position. He then filed a charge that he was discriminated against either because of his gender, marital status, or sexual orientation. Eventually this case got to the ALJ, and a hearing was held. The ALJ made a recommendation which denied any discrimination except for on the basis of gender, and in regards to a substitute office worker eligibility list. What the ALJ recommended was that Mr. Luker be placed on this office worker eligibility list for one year with the right of first refusal. The commission adopted this recommendation, and then we appealed. There is a three-part analysis that we need to look at here. The first part is whether Mr. Luker has established a prima facie case. There are four elements to this. The first is whether Mr. Luker was in a protected class, this being male. The second element is that he applied for and was qualified for job seeking applicants. The third is that he was rejected despite his qualifications, and the fourth is that after rejection the employer sought applicants from persons of his qualifications. The element that we really have a problem here is the second element. First, the evidence does not show that Mr. Luker applied for the substitute office worker eligibility list. The application that was filled out by Mr. Luker said, teaching assistant. At the beginning of the hearing in front of the ALJ, Mr. Luker said, I was applying to be a teaching assistant. There is no evidence that the school district was even interviewing for the substitute office worker eligibility list, other than a conclusion drawn by the ALJ. The ALJ said that the interviews were conducted throughout the year, but this is not entirely true. What the school district representative testified is that if they needed more workers on this eligibility list, then they were interviewing. The representative did not recall whether they were interviewing for this position at the time of Mr. Luker's interview, but if they were not, she wouldn't have asked him questions regarding the office worker eligibility list. Mr. Luker was under the impression himself that he was not interviewed for this position. He testified at two different points regarding when he even found out that there might be an office worker position available. Not the substitute office worker eligibility list, but an office worker position. At one point he said he didn't remember if it was before or after his interview. And at another point he said that it was after his interview. Again, leading us to the conclusion that he did not apply for this eligibility list at all. The commission focused heavily on the fact that Mr. Luker took some office worker tests, a typing test and such, to establish that he was in fact applying for the office worker eligibility list. In fact, Mr. Luker testified that he took these tests because he thought it might be necessary for the teaching assistant position. It was Mr. Luker's burden to show that he applied for a job that was accepting positions. He hasn't shown that he applied for this eligibility list. And he also hasn't shown that the school district was even approving persons to be placed on this eligibility list. The second part of this... How would he even show that he'd been rejected when his testimony was that he had not been rejected for the position of officer substitute? Exactly. He never received rejection. The rejection that he received was for the... He said you were focusing on element two, but element three says there has to be a rejection, and his own testimony was that he was not rejected. Correct. I was just starting with element two. But I also believe that he wasn't rejected for the office worker eligibility list because he didn't apply for it. So I guess starting with element two, because he never applied, then he never was entirely rejected for that position. The ALJ felt that he did apply for this, and he should have been considered for this eligibility list despite the evidence to the contrary. But moving to the second part of the second element, it's that Mr. Luker had to be qualified also. Well, how did the ALJ come to the conclusion that he'd been rejected when that is contrary to his own testimony? Do you know? I honestly don't know. I don't see where there was any conclusion by the ALJ that he was rejected. I do recall seeing where the ALJ thought he applied for the position. Basically, the ALJ, I think, kind of said that the school district couldn't just sit back on this application and ignore it instead of rejecting it. So I think that's kind of where the ALJ was coming from, is that they were saying that what we did is we just ignored this application for the substitute office worker eligibility list altogether, and I guess that in itself was a rejection. Maybe I misunderstood the briefs, but I thought he amended his application to make it clear that he still wanted to remain and still was eligible for the position of office assistant substitute. What he did is he took this office worker test. The thing that was changed here, he never came in and changed his application, and he testified to that. The only thing that was marked on the, I guess it was an interview sheet used by Marsha Uptorff, the one who interviewed him, was that he was interested in both positions, but the testimony that came from that was just that that was done by an office worker who saw his office test scores, and that's why she made that check. It was just an assumption made by her, and through his own testimony, he didn't even learn about this position until after the interview. That's what he said. So that's where they are with that, is he didn't know about it. He did come back. The one thing he did come back and change is he added that he had a disability that he wouldn't disclose. Yes, that's what I was referring to. Right, that's what he, yes. And that was after the fact. That was after he wasn't hired for the substitute eligibility list. I'm using the word hired, though I guess placed on the list is a better term, but I think you know what I'm meaning. So he came back after he received this letter about the teaching assistant position and that he wasn't going to be approved for the list, and he then adds that he has a disability that he's not going to disclose. And it's unclear as to why he does that. He says at the hearing in front of the ALJ that it's basically in case he ever is considered for the office worker position, now they can't discriminate against him because of the disability that they don't know. It's a little confusing because I think he was a little confused, so that's kind of where we are with that. But that was the amendment that was made to the application. And that was after he was rejected for the substitute teaching assistant position. So moving on to the second element of the second element was about whether he was qualified for this position. So even assuming he did apply for this eligibility list for the office worker, which we don't believe that the evidence supports at all, he certainly wasn't qualified. I'm sure you've seen Mr. Luker's application. There are no professional references given. There's no substantial work history for 20 years. The only work history given for the past 20 years is as a temporary election judge, which is a one-day event that he did for two years or three or four years. So that's maybe four days of work, and then a brief stint as a laboratory assistant for one semester. So less than six months of work in 20 years. He claims that he was collecting Social Security for this disability that he won't disclose, and also winning sweepstakes, which really has no bearing on work experience. He told Ms. Uchtdorf in his interview that he did not have experience with children. And based on his interview and his resume, the school district found that he wasn't a good fit for the position. Luker himself said that he should have given his full resume to the school district. He admits that he doesn't do this. We never will know what that might contain, but they couldn't consider what they didn't have in front of them. And what they did have in front of them was a very, very sparse application. The school district testified that they would not hire someone with 20 years of no work experience, and that as an HR director, that wouldn't be a sound decision to make. Luker also later, when discussing damages, stated that he had applied at the local library. He wasn't hired there either, though I don't think that he filed suit on that one. And he admitted it was a catch-22, and he said again, it was probably because of my work history. And he said, you know, this is going to be a problem for me trying to get a job now that I haven't had a job, which I think we can all agree makes perfect sense. This isn't just an issue of credibility. This is an issue of common sense. This is an issue of the evidence, the application, of the testimony of the school district, and of Luker himself. Even if we agree with the ALJ and say that a prima facie case exists, the employer still then can articulate and does not need to prove a legitimate non-discriminatory reason for the non-hire. Again, I think the ALJ improperly placed the burden on the school district to have some kind of proof here. The school district provided a reason that they did not hire Mr. Luker. These are the same reasons that he was not qualified for these positions. No work history, no experience with children, not a good fit based on the interview, no personal references, the catch-22 that he himself admitted. The commission focuses on the fact that Mr. Luker did well on these office tests and had decent scores on these skills. But this is a mere minimum. This is not the end of the process. Like any job, you're still going to have to have an interview. You're going to have your resume reviewed. All of those things need to happen. It's very important, I feel, to keep in mind that this is a school district. The best interests here are of the children. This is what the school district is looking at. This is what the school district representatives testified that they are going to be looking at. And I think like any business, the person interviewing for the job is going to know what their profession needs most. The same is true with the school district. The difference here is, by statute, the school district and its employees are going to stand in place of the parents. They have a responsibility to the parents. They have a responsibility to the children. And their number one goal is the best interests of the children. We need to trust the judgment of the school officials when going through these interviews, when going through these resumes, when it comes to our children, and when it comes to deciding on who is the best fit to be working with in our school districts. And I think that the school district clearly provided a reason that Mr. Lugar, well, some reasons that Mr. Lugar was not placed on this eligibility list. Even if a legitimate reason is given, the complainant can then prove that this reason was not the real reason. In doing so, he needs to present evidence of some kind of intentional discrimination. Basically, he can't just discredit the reason, but he also needs to show some kind of intent of discrimination. And the reason for this is, we can't simply say just because he was the only male that applied for this, or allegedly applied for this office worker eligibility list, and he was the only male then not hired. That alone does not create discrimination. He needs to have some kind of proof here. It is his burden of proof. It was his burden of proof through each of these elements here, and he hasn't provided this proof. He simply took that the school district said he was not a good fit to mean that he was not hired because he was a male and because he had no children. And that's what he testifies to. He says, you know, I don't know why she asked me if I had experience with children, but I assume it's because I had no children that I wasn't hired. And this just keeps coming back. And then he throws out that it might be because it's a male. Really, what he's doing here is he's throwing out about every reason he can think of. He's throwing out his marital status, his sexual orientation, the fact that he's a male. Then he even comes back to amend his application to show that he has a disability. And he's basically saying, well, I wasn't hired, so it must be because of one of these four reasons. And that's simply not true. Of course, there are many reasons that people don't hire applicants. It can be because of their resume showing they haven't worked in 20 years. It can be because of a bad personality in a job interview. And the fact that he wasn't hired doesn't necessarily mean there was discrimination, and he hasn't given any proof of discrimination. In fact, there's evidence to the contrary. The school district representatives testified it would never cross their mind not to hire males. There's evidence that males were placed on the substitute teaching assistant eligibility list. There are males, of course, working in the school district. And like I said, the fact that no other males applied and Lucre was not qualified, that doesn't equal gender discrimination. The ALJ focused on the fact that the school district said that they could hire who they want. But really, this is true. Of course, they can't not hire someone for an illegal reason. But you can hire someone because they're not a good fit for you, and that's exactly what the reason was given. And there's been plenty of support for that reason. Finally, the ALJ abused his discretion in the relief that was granted here. What the ALJ recommended and the commission adopted is that Mr. Lucre be placed on the office worker eligibility list for one year with the right of first refusal. He would have never had the possibility for a right of first refusal. He would have never been guaranteed any type of placement by being on this eligibility list. What this does, then, is possibly place Lucre above people who may have been on this list for ten years, who may have been a teacher in the past, who may be of another protected class. Really, we're just creating more problems by making this right of first refusal than by solving anything. Based on all of the evidence, I think that the ALJ and the commission, the decision was against the manifest weight of the evidence. The obvious conclusion here is clearly evident. This is based not only on the testimony, on the applications, but also just on the common sense looking at this person and trusting the school district and their representatives to make a decision when hiring someone to work with our children. Thank you, counsel. Ms. Guachianza. Thank you. Good morning, Your Honors and counsel. Good morning. May it please the court, Assistant Attorney General Linda Guachianza on behalf of the state respondents. The question before this court is not whether a different trier of fact could have weighed the evidence in this case differently. Instead, the main question here is whether the commission's finding that Decatur discriminated against Lucre on the basis of sex was against the manifest weight of the evidence. And we submit that the commission's decision in this case was supported by the evidence and that it should be upheld. To establish his claim of sex discrimination through the indirect method, which is what Lucre used, he had to first establish a prima facie case regarding Decatur's failure to place him on the list as a substitute office worker. So he had to show that he applied, qualified for the position, and was rejected under circumstances that give rise to unlawful discrimination. Here, the commission found that he applied because, first, in his employment application, Lucre completed the section related to the clerical position. At Decatur's August 9, 2006, orientation, Lucre filled out the substitute classified profile sheet and he checked boxes for both the office worker position and for the teaching assistant position. Decatur gave him the written test for the substitute office worker position, as well as a typing test, and neither of those would be relevant to the teaching assistant position. Well, he thought they were, though, didn't he? He expressed some reason why he took those. He may have thought that they were relevant, but Decatur, as the school district and as the employer, would know that those two tests are not necessarily relevant to the substitute teaching position, or substitute teaching assistant position, and the only way that they would be relevant would be for the office worker position. And the record also shows that their application process was flexible, so you didn't necessarily need to write down the specific position you were applying for as a substitute worker in order to be considered for that position. One of his comparators, Bradford, wrote down that she was interested in the clerical position on her application, but she was also considered and, in fact, given assignments as a substitute teaching assistant. Decatur also had an ongoing system of accepting applications throughout the year from people who wanted to be considered for both eligibility lists, and, again, as I just mentioned, the process was flexible in terms of being considered for a substitute teaching assistant position rather than the office worker position. So these facts, as found by the commission, show that he applied to be a substitute office worker. In terms of his qualifications, the responsibilities for the substitute office worker position largely consisted of answering phones, taking messages, and typing, which comports with the general understanding of the role of a secretary. The substitute office worker did not have significant contact with children, and both of Decatur's representatives conceded that Luker's test, or rather his typing test, as well as his office worker test, suggested that he was technically qualified for the position. And then in terms of being rejected under circumstances that give rise to an inference of discrimination, his test exam results were significantly higher than female applicants who were placed on the eligibility list. And the fact that he was given both of these exams, the office worker as well as typing exam, showed that he was interested in the position. And I think there's also evidence in the record that he discussed his interest in being a substitute office worker with someone from Decatur, and they told him, oh yeah, you can just write that down, meaning, you know, just indicate on the box that you're interested in both positions and you would be considered. So what in the record indicates that he was rejected for the substitute office worker position? I was trying to look up just now a specific site for, you know, somewhere that the ALJs specify that he was not accepted, or rather rejected. Well, and put aside the ALJs decision, just where in the evidence before the Human Rights Commission does there appear a rejection of any sort? Well, both of Decatur's representatives, Robinson and Uchtdorf, stated that we didn't consider him for the position. So I think that constitutes a rejection. Being not considered for a position, I think, is the same as being. Who did they hire? Who did they place on the list? Who did they, yeah. I don't know that the record contains the list from 2006. So I can't answer that question. But I think, I mean, their process would be to always maintain a list of someone was placed on the list. I think that's pretty fair to say, based on their description of their application process. So that's in the record? Someone was placed on the list? What's in the record is that they have this process whereby people are continually being interviewed for placement on the list. And I think they specifically describe that August 9th orientation where applicants came in and discussed, you know, were given more information about the positions and were told about the process for being placed on the list. And it was an ongoing thing. During the hearing in November of 2008, there were questions asked of Mr. Luker. And the ALJ asked him, so as far as you know, your application is still pending, even as of today, with respect to the office assistant substitute. And Mr. Luker responded, right, as far as I know. It wasn't put in the letter. I mean, and there is other evidence in the record that seems to indicate the district didn't communicate any rejection in regards to the office worker position. I think that in this case, you know, the saying actions speak louder than words. No, they didn't ever officially tell him. They didn't send a written document to say you are not considered for this position. But it being 2014 and his having applied for placement on the list in 2006, I think it's pretty fair to say that he was rejected. Well, I think the first question is, did he even apply for it? And I thought his testimony was he did not. He was really applying for the substitute teaching assistant position. And in fact, the interviewer asked only questions about that position and never asked him any questions about the other one because she didn't think he was applying for it. And wouldn't that explain why he never got a rejection letter? Because the school, looking at it, saw him applying for the teaching assistant position and sent him a letter of rejection for that position, but didn't send a letter with respect to the other. The evidence in the record shows that Uptorf, typically, if she saw that both boxes were checked for both teaching assistant as well as office worker position, she would ask an applicant what position he was interested in applying in. The record also shows that if Uptorf saw the exam results from the typing test as well as the office worker test in an applicant's file, that she would ask, you know, if there was any ambiguity whatsoever, she would ask, what position is it that you're applying for? She didn't do so in this case, and when asked why, didn't have any response. But he didn't say he was applying for it either at the hearing, right? He never said he was applying for the... He did indicate that he was interested in the position. I think, I'm not sure if he said specifically, he definitely didn't amend his written application, but I think that that's because he was told that he didn't need to do so by someone at Decatur. That even if he were interested in applying for this substitute office worker position, all he needed to do was note on the profile sheet his interest in both, and that would be sufficient. Okay, but he... His application form that was submitted did not indicate he was applying for that job. His written application stated he was interested in the teaching assistant position, and he filled out the position, or he filled out the section related to the clerical position as well. Filled it out? When you say that, you mean his test scores were put there? No, I mean, on the application itself, there's the... What position are you interested in, and he wrote teaching assistant. Then there are other sections, and it says clerical position, and I think he wrote in his estimated words per minute that he typed, or something to that effect. So there is something on the application itself. Right, but that wasn't the same as what he said. As far as what position are you interested in, he identified one. Right, because he was told, again, because he was told, as the commission found, he was told that he didn't need to amend. By whom? He said that he discussed this with someone at Decatur. I believe it was their secretary in charge of finding the substitute.  So, again, despite having the documents in his file indicating his interest in both positions, he was asked no questions related to the position, and Robinson initially stated only that he wasn't a good fit for the position, and that Decatur could hire anybody they wished. So, because Luker was applied, and was qualified, and was rejected, under circumstances that suggest, or that give an inference of unlawful discrimination, Decatur had to articulate a non-discriminatory reason for not placing him on the list. And at the hearing, they claimed that his lack of significant employment history, and lack of experience with children, made him unqualified to be a substitute office worker. The commission found that these reasons were pretextual, and that they were not the true reasons for rejecting Luker, because at the hearing... Could I interrupt you there? Yes. I'm sorry, but you identified that reason in lines with the substitute office worker position. Did they identify that position specifically, or was it the substitute teaching position that was referenced? I'm sorry, I don't know. The question is whether Decatur mentioned both. You indicated, just as you were leading into this, that the reasons that they gave, the lack of experience with children, and the other one, made him not suited for the substitute office worker position. Yes. Who said that? That was Decatur's position at the hearing, as well as in its briefs before the commission. Well, was that an argued position at hearing, or was that someone's testimony and evidence that that was the basis given to Mr. Luker, for not hiring him for the substitute office worker position? I think it was more an argument presented at the hearing, and there was some testimony, as counsel mentioned, from the human resources director saying that, oh, I would never hire someone without significant employment history. But upon further questioning, the commission discovered that they never really looked at his employment history while they were reviewing his application initially. And those are some of the reasons why the commission found that the stated reasons were pretextual. Again, when asked at the hearing whether Uchtdorf had looked at Luker's job experience, she said, probably only briefly. Robinson stated at the hearing that Decatur didn't consider him for the position, even though she acknowledged that he took the test, and that would typically signify someone's interest in the position, and they couldn't explain why he wasn't considered. Robinson and Uchtdorf also didn't contact any prior employers for any other applicants to verify whether they had worked in the positions as stated, and what their work habits were there. And then with respect to the experience with children, there is no evidence in the record showing that Decatur asked at least one of the female applicants who ultimately was placed on the eligibility list about her experience with children. And I'm sorry, is that the eligibility list for the substitute office worker position? Yes. Who's to say that that question wasn't asked of Mr. Luker in reference to the substitute teacher position? He was asked that with respect to the substitute teaching assistant position, and in fact that's why the commission ruled in Decatur's favor for that position, because the commission found that prior experience with children would be relevant to a teaching assistant position, but not to an office worker position where the responsibilities essentially are to type, take messages, and to answer phones. I'm sorry, is that the question? I'm not sure. You may have been making a point that I didn't catch there, but it doesn't seem to me that that question being asked is evidence of discriminatory intent if it is relevant whether or not the individual has experience with small children to the position of substitute teaching assistant. The individuals that weren't asked that question weren't interviewing for that position, though, as I understand it. You're talking about individuals that were placed on the eligibility list for the substitute office worker position. Is that what you're saying? I'm sorry, I don't understand. I'll find it in the record if I need to follow up on that. Thank you. Okay. In Reeves v. Sanderson plumbing products, the United States Supreme Court made clear that a fact finder can find unlawful discrimination based on disbelief of the employer's stated reasons plus the elements of the employee's prima facie case. And in this case, the commission found the following factors suggesting intentional sex discrimination. The disparity in test and typing scores between female applicants and LUCRE. The favorable treatment given to female applicants, namely that the record doesn't show that some of the female applicants who were placed on the eligibility list had prior experience working with children and all of LUCRE's comparable female applicants were placed on the eligibility list and given assignments without Decatur having questioned their previous employment history. And also, ultimately, Decatur's failure to answer at the hearing why it didn't consider him for the substitute office worker position given his test score. As this court observed in Cisco Trucking Company, the ultimate question is whether the record as a whole supports the finding of discrimination. And the commission concluded based on the facts that we've discussed and on the entire record that LUCRE had shown by a preponderance of the evidence that Decatur had discriminated against him on the basis of sex. With respect to the remedy, the remedy issued by the commission was not an abuse of discretion. It's authorized by statute to take such action as necessary to make the complainant whole. And in this case, he would have been placed on the eligibility list and given the opportunity to be considered for job opportunities as they become available. But in this case, because the commission found that Decatur already had discriminated against LUCRE and because of Robinson's statement that we can do whatever we want, it thought that some sort of guarantee that he would be considered was necessary. And so it gave him a right of first refusal for positions that become available on a given day. In R.R. Donnelly, as a remedy for discrimination in not interviewing an employee for a promotion, the employee was awarded the promotion. The employer argued that, oh, she should only have the right to be interviewed for the promotion. But in that case, the commission found that because there was discrimination, her qualifications wouldn't properly be considered, and so it awarded her the job. In this case, because Decatur discriminated against LUCRE on the basis of sex, just placing him on the eligibility list wouldn't be effective to correct the discrimination. Decatur claims that there's an injustice in giving him the role, but these are substitute clerical positions, so no other worker on the eligibility list could have any reasonable expectation of being given a role on any given day. So unless this Court has any further questions, we ask that you affirm the commission's decision for the reasons stated and those in our brief. Thank you, Counsel. Ms. Thompson, rebuttal. Yes, Your Honor, just briefly. First, I just wanted to quick touch on the comparable females in regards to what the commission has said about not contacting their past employers, things of the sort. The evidence is clear that each of these comparable females had previous work history, had professional references. This is all listed on their application. That in itself shows work ethic, reliability, and ability to keep a job, things that LUCRE's application don't reference. Going back to the element of the prima facie case involving the application and the rejection of Mr. LUCRE, it's clear that the school district considered LUCRE for the teaching assistant position. He was under the impression, he testified, I was under the impression I was only interviewed for the teaching assistant position. In this interview, although he was under this impression, he didn't bring up the office worker position. He didn't later ask about the office worker position. He didn't do anything like that. What the commission is referring to in his application is this section called clerical position, in which he enters 60 words per minute, data entry experience, and all of this. He has testified that he thought that this would have irrelevance to the teaching assistant position because you might be typing and you might be using word processing and such as a teaching assistant. And that's why this was filled out. This application was filled out on August 3rd. Now the commission is saying he spoke to someone in the office at some point who told him he didn't need to change anything. First off, Mr. LUCRE never testified when he talked to anyone in the office. He said it could have been before or after the interview, and at one point said it was after the interview. So that could have nothing to do with this application here. We know why he filled out this section of the application here, and it was because he thought it was relevant to the teaching assistant position. It was later, probably after his interview, that he even talked about this office worker position, and that was with the secretary. It wasn't with anyone that he interviewed with. It wasn't following up with the school district asking, hey, you said that you're rejecting me for the substitute teaching assistant position, but what about the office worker eligibility list? That never occurred. It really just was kind of an afterthought to him, at least based on the record, that, oh, well, I guess I can file a suit for this too and see what happens. It's true that there is a, I guess, a meeting held where people can come in and apply for these positions, and that is ongoing. Of course, I could send my resume in anywhere, and it would be ongoing. Whether I'm actually interviewed for that position is another story. Marla Uptorf did not recall whether they were interviewing for the office worker position at the time of LUCRE's interview. So while they might be accepting applications, that doesn't mean that they are actually approving people for the list. It doesn't mean that they're interviewing people for the list, and this is the reason that she gave as to why he might not have actually been considered for this office worker eligibility position, despite the fact that he did take these office worker tests. She, there have been no, there's no evidence of anyone that's placed on the office worker eligibility list around the time of LUCRE's interview. The three women that were placed on the substitute office worker eligibility list were a year before LUCRE. So from the record, we don't see the evidence supporting the fact that they were placing people on this list and that they considered him for this list and that they rejected him for this list, and this is all LUCRE's burden of proof. I think that the court understands that the application and rejection for this eligibility list, I think that the evidence is lacking. It was LUCRE's burden of proof and the evidence doesn't support it, and for those reasons, we would ask that this court reverse the commission's decision. Thank you. Thank you. This court will be in recess until afternoon.